per curiam:
Se nos solicita la revisión de una Resolución emitida por el Tribunal de Apelaciones, Región Judicial de San Juan, que sostuvo que el Centro de Recaudación de Ingresos Municipales (CRIM) tiene el beneficio del término extendido de sesenta días para presentar un recurso de apelación ante el Tribunal de Apelaciones. Veamos los hechos que originan el presente recurso.
I
El 7 de noviembre de 2005, notificada el 14 de noviem-bre de 2005, el Tribunal de Primera Instancia, Sala Superior de San Juan, emitió una Sentencia en los casos consolidados Plaza Las Americas, Inc. v. Centro de Recaudación de Ingresos Municipales, civiles números K C02004-0017(807), K C02004-0004, K C02004-0005, K CO 2004- *232 0015, K C02004-0028, K C02004-0037 y K C02005-0010.(1) Sostuvo, entre otras cosas, que los inquilinos de Plaza Las Américas, Inc. (Plaza) poseían todos los atribu-tos prácticos de dominio sobre las mejoras efectuadas por ellos y que eran, por lo tanto, los únicos responsables del pago de la contribución territorial impuesta sobre estas mejoras según las disposiciones de la Ley de Contribución Municipal sobre la Propiedad de 1991, Ley Núm. 83 de 30 de agosto de 1991.(2)
Inconformes, el 13 de enero de 2006, el CRIM presentó su Apelación en el Tribunal de Apelaciones.(3) Este escrito fue presentado a los sesenta días del archivo en autos de la sentencia recurrida.
El 26 de enero de 2006, Plaza presentó su Moción Soli-citando se Desestime la Apelación por Falta de Juris-dicción.(4) Alegó, entre otras cosas, que el CRIM estaba obligado a presentar la apelación no más tarde de treinta días contados desde la fecha de archivo en autos de la copia de notificación de sentencia. Sostuvieron, entre otras, que el CRIM no era una de las agencias gubernamentales fa-vorecidas por la extensión del término a sesenta días, ya que no era una instrumentalidad del Estado Libre Aso-ciado (Estado) o un municipio de Puerto Rico. Solicitaron que se desestimara la Apelación por falta de jurisdicción.
El 16 de febrero de 2006, el CRIM presentó su Moción en Oposición a que se Desestime la Apelación por Falta de Jurisdicción en el Tribunal de Apelaciones.(5) Alegó, entre otras cosas, que el CRIM representaba el poder soberano del Estado para imponer y cobrar contribuciones. Argüyó, además, que el CRIM era una agencia o instrumenta- *233 lidad del Estado a la que le aplicaba el término de sesenta días para presentar los recursos de apelación dispuestos por el Reglamento del Tribunal de Apelaciones. Solicitaron que el tribunal no diera paso a la solicitud de desestima-ción por falta de jurisdicción.
El 22 de febrero de 2006, el Tribunal de Apelaciones emitió una Resolución,(6) en la cual sostuvo, entre otras cosas, lo siguiente:
La naturaleza de las funciones que presta el CRIM, la cual consiste esencialmente del cobro de contribuciones territoria-les, lo cual a su vez es un atributo tradicional del rol del Es-tado, amerita qúe esta entidad sea tratada como una agencia a los fines de las Regla 13(A) del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B, R 13(A) y la Regla 53.1(c) de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 53.1(c). En su consecuencia, el CRIM cuenta con un término de se-senta (60) días para presentar apelación ante este Tribunal.
Insatisfechá, Plaza acude ante nos mediante un recurso de certiorari y alega la comisión del error siguiente:
ERRÓ EL TRIBUNAL DE APELACIONES AL DETERMI-NAR QUE EL CRIM “AMERITA” SER TRATAD [O] COMO UNA AGENCIA DEL GOBIERNO A LOS FINES DE LA RE-GLA 13A DEL REGLAMENTO DEL TRIBUNAL DE APELA-CIONES Y LA REGLA 53.1(C) DE LAS DE PROCEDI-MIENTO CIVIL VIGENTES. LAS AGENCIAS DEL GOBIERNO QUE CUENTAN CON 60 D[Í]AS PARA RADI-CAR UNA APELACI [Ó]N ANTE EL TRIBUNAL DE APELA-CIONES ESTÁN CLARAMANTE DEFINIDAS EN DICHAS REGLAS Y EL CRIM NO ES ALGUNA DE ÉSTAS. NO ES ASUNTO DE MÉRITO, SINO DE DESIGNACIÓN.
Con el beneficio de la comparecencia de las partes, estamos en posición de resolver los asuntos traídos ante nuestra consideración. Veamos.
*234 II
A. La Regla 53.1(c) de Procedimiento Civil,(7) (Regla 53.1(c)), dispone lo siguiente:
(c) Términos para presentar el escrito de apelación. —El re-curso de apelación deberá ser presentado en la forma antes dispuesta, dentro del término jurisdiccional de treinta (30) días contados desde el archivo en autos de una copia de la notificación de la sentencia dictada por el tribunal apelado. Si la fecha de archivo en autos de copia de la notificación de la sentencia, es distinta a la del depósito en el correo de dicha notificación, el término se calculará a partir de la fecha del depósito en el correo.
En aquellos casos en que el Estado Libre Asociado de Puerto Rico, sus funcionarios o una de sus instrumentalidades que no fuere una corporación publica, o los municipios de Puerto Rico sean parte en un pleito, el recurso de apelación se formalizará por cualquier parte en el pleito perjudicada por la sentencia, presentando un escrito de apelación en la forma antes dis-puesta y dentro del término jurisdiccional de sesenta (60) días contados desde el archivo en autos de una copia de la notifica-ción de la sentencia dictada por el tribunal apelado. Si la fecha de archivo en autos de copia de la notificación de la sentencia, es distinta a la del depósito en el correo de dicha notificación, el término se calculará a partir de la fecha del depósito en el correo. (Enfasis suplido.)
La Regla 13(A) del Tribunal de Apelaciones(8) (Regla 13(A)), dispone lo siguiente:
(A) Presentación de la apelación. —Las apelaciones contra las sentencias dictadas en casos civiles por el Tribunal de Pri-mera Instancia, se presentarán dentro del término jurisdiccio-nal de treinta (30) días contados desde el archivo en autos de una copia de la notificación de la sentencia.

En aquellos casos en que el Estado Libre Asociado de Puerto Rico, sus funcionarios (as) o una de sus instrumentalidades que no fuere una corporación pública, o en que los municipios de Puerto Rico o sus funcionarios sean parte en un pleito, el re-curso de apelación se formalizará, por cualquier parte en el 
*235
pleito que haya sido perjudicada por la sentencia, presentando un escrito de apelación dentro del término jurisdiccional de sesenta (60) días, contados desde el archivo en autos de una copia de la notificación de la sentencia dictada por el tribunal apelado.

Si la fecha de archivo en autos de copia de la notificación de la sentencia, es distinta a la del depósito en el correo de dicha notificación, el término se calculará a partir de la fecha del depósito en el correo. (Énfasis suplido.)
B. La Ley Núm. 80 de 30 de agosto de 1991, según enmendada (Ley 80),(9) creó el CRIM como parte de un conjunto de leyes dirigido a ampliar los poderes y las facultades de los municipios.
La Exposición de Motivos de la Ley 80, supra, dispone lo siguiente:
A los fines de alcanzar el objetivo antes mencionado, se es-tablece el Centro de Recaudación de Ingresos Municipales con el propósito de que, en representación de los municipios, y bajo el control de éstos asuma las responsabilidades relativas a la contribución sobre la propiedad que al presente desempeña el Gobierno Central. (Énfasis suplido.)
El Art. 3 de la Ley 80, supra, 21 L.RR.A. sec. 5802, dispone lo siguiente:
Se crea una entidad municipal, independiente y separada de cualquier otra agencia o instrumentalidad del Gobierno del Estado Libre Asociado, denominada “Centro de Recaudación de Ingresos Municipales”. El Centro es la entidad de servicios fiscales, cuya responsabilidad primaria será recaudar, recibir y distribuir los fondos públicos provenientes de las fuentes que se indican en este capítulo que corresponden a los municipios. (Énfasis suplido.)
El CRIM es una entidad independiente y separada de cualquier otra agencia o instrumentalidad del Gobierno.(10) Se creó para recaudar y distribuir los fondos públicos que *236 le corresponden a los municipios de Puerto Rico.(11) La Ley 80, supra, transfirió al CRIM todos los poderes, las funcio-nes y las obligaciones conferidas por ley o reglamento al Departamento de Hacienda en relación con la tasación, no-tificación de imposición, determinación y cobro de la con-tribución sobre propiedad.(12)
Según el Art. 5 de la Ley 80, supra, al CRIM lo dirige una Junta de Gobierno (Junta) integrada por nueve miem-bros, de los cuales siete serán alcaldes en representación del resto de los municipios de Puerto Rico y los restantes dos miembros son el Presidente del Banco Gubernamental de Fomento y el Comisionado de Asuntos Municipales.(13) El Presidente de la Junta de Gobierno del CRIM será uno de los alcaldes miembros, escogido mediante el voto afir-mativo de la mayoría del total de los miembros de la junta.(14) El Director Ejecutivo del CRIM también es nom-brado por la Junta. (15)
El Art. 4(1) de la Ley 80, supra, expresa que el CRIM podrá demandar y ser demandado. (16) En otras palabras, tiene personalidad jurídica propia.
El Art. 10 de la Ley 80, supra, expresa que el CRIM será un administrador individual, según se definió el término en la ya derogada Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975 (3 L.P.R.A. ant. sec. 1301 et seq.).(17) Se indica, además, que los funcionarios y empleados del CRIM tienen derecho a acogerse a los beneficios de la Ley del Sistema de Retiro de los Empleados del Gobierno de Puerto Rico y sus *237 Instrumentalidad.es, Ley Núm. 447 de 15 de mayo de 1951, según enmendada, 3 L.P.R.A. sec. 761 et seq.(18) De igual forma, los funcionarios y empleados del CRIM están sujetos a la Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico, Ley Núm. 12 de 24 de julio de 1985 (3 L.P.R.A. sec. 1801 et seq.).(19) Sobre estos particulares, en C.R.I.M. v. Fed. Central Trabajadores, 142 D.P.R. 968, 978 (1997), sostuvimos lo siguiente:
Reiteramos que la reglamentación de las condiciones de tra-bajo del empleado público es un factor importante en la deter-minación de si tal empleado tiene derecho constitucional a la negociación colectiva. Si no está protegido por lá Ley de Personal del Servicio Público de Puerto Rico, o por algún otro régimen análogo de servicio civil, su carácter como trabajador se asemeja al de las empresas privadas y, por lo tanto, existi-ría un fundamento significativo en favor de su derecho a la negociación colectiva. J.R.T. v. Corp. del Conserv. Música P.R., supra.
Según queda señalado, el C.R.I.M., como administrador individual, está integrado al sistema de personal del Gobierno y sus empleados están protegidos por las garantías de la Ley de Personal del Servicio Público de Puerto Rico. En este respecto, la situación del C.R.I.M. se asemeja a una agencia gubernamental típica. Véase J.R.T. v. Corp. del Coserv. Música P.R., supra. (Énfasis en el original.)
Sobre la autonomía fiscal del CRIM, sostuvimos lo si-guiente:
Contrario al criterio de ia Junta, concluimos que, en reali-dad, el C.R.I.M. no tiene verdadera autonomía fiscal debido a una incapacidad de facto para generar sus propios fondos. J.R.T. v. Corp. del Conserv. Música P.R., supra. Según hemos expuesto, su razón de ser y responsabilidad primaria es recaudar, recibir y distribuir los fondos públicos de los municipios que provengan de las distintas fuentes indicadas en la ley. Art. 16 de la Ley Núm. 80, supra, 21 L.P.R.A. sec. 5815.
Arm así, la Junta concluyó que. el C.R.I.M. tiene verdadera autonomía fiscal, toda vez que la ley le autoriza a disponer, *238 controlar y administrar sus fondos operacionales. Al res-pecto sostuvo que la ley faculta al C.R.I.M. a decidir el carácter, la necesidad y la forma en que habrá de incurrirse y autorizarse sus gastos. Art.4(n) de la Ley Núm., supra, 21 L.P.R.A. sec. 5803(n).
Esa conclusión es errónea y no guarda relación con la natu-raleza real del C.R.I.M. La facultad de aprobar su propio pre-supuesto para gastos administrativos no implica que tiene la autonomía fiscal que caracteriza a una empresa privada o a aquellas agencias gubernamentales que funcionan como tales. Al respecto está obligado a “[r]endir al Gobernador de Puerto Rico, a la Asamblea Legislativa y a la Asamblea Municipal de cada municipio, no más tarde del 30 de enero de cada año, un informe anual sobre todas las actividades y logros del centro, acompañado de los informes financieros anuales”. Art. 7(h) de la Ley Núm. 80, supra, 21 L.P.R.A. sec. 5806(h).
Las facultades y funciones del C.R.I.M. no lo enmarcan den-tro de los conceptos “negocio lucrativo” y “beneficio pecunia-rio”, según nuestra interpretación jurisprudencial. J.R.T. v. Corp. del Coserv. Música P.R., supra[.]
En resumen, tanto por sus fines eminentemente públicos como por su esencial dependencia presupuestaria, el C.R.I.M., como institución, se asemeja a una agencia gubernamental típica. Véase J.R.T. v. Corp. del Coserv. Música P.R., supra. (Enfasis suplido y en el original.) C.R.I.M. v. Fed. Central Trabajadores, supra, págs. 975-977.
III
Con el trasfondo normativo antes expuesto, pasamos a resolver si erró el Tribunal de Apelaciones al determinar que el CRIM contaba con un término de sesenta días para presentar una apelación ante ese tribunal.
En su Resolución, el foro intermedio apelativo declaró “no ha lugar” la Moción Solicitando se Desestime la Apela-ción por Falta de Jurisdicción que presentó Plaza. Estamos de acuerdo. Veamos.
La Regla 53.1(c) de Procedimiento Civil, supra, y la Re-gla 13(A) del Tribunal de Apelaciones, supra, son claras al establecer un término de sesenta días para la revisión de sentencias en aquellos casos en los que el Estado, sus fun-cionarios, sus instrumentalidades o los municipios sean *239 partes en el pleito. Como única excepción a esta norma es el caso de las corporaciones públicas, que sólo cuentan con un término de treinta días para solicitar revisión de las sentencias dictadas en los casos en que sean partes.
Cuando la letra de la ley es clara, no hay espacio para interpretaciones y la voluntad del legislador tiene que ser respetada. (20)
De una simple lectura de la Regla 53.1(c) de Procedi-miento Civil, supra, y la Regla 13(A) del Tribunal de Ape-laciones, supra, se demuestra inequívocamente la claridad y falta de ambigüedad en su contenido con respecto a la extensión del término de sesenta días a todas las partes involucradas en el pleito en cualquier caso en que una ins-trumentalidad del Gobierno, como el CRIM, sea parte.
El CRIM, por su naturaleza, se asemeja a una agencia o instrumentalidad gubernamental típica. Tan es así, que en el Art. 2(e) de la Ley 80, supra, 21 L.P.R.A. sec. 5801(e), se define la palabra Centro de la manera siguiente:
Artículo 2. — Definiciones
(e) “Centro” significará la entidad pública creada para ofre-cer servicios fiscales a los municipios y denominada “Centro de Recaudación de Ingresos Municipales”. (Énfasis suplido.)
De igual manera nos expresamos en C.R.I.M. v. Fed. Central Trabajadores, supra, pág. 978, cuando señalamos que, “[e]n este respecto, la situación del C.R.I.M. se asemeja a una agencia gubernamental típica”. (Enfasis en el original.)
En el pasado, ya hemos sostenido que el CRIM no se asemeja a una empresa privada, puesto que como adminis-trador individual estaba integrado al sistema de personal del Gobierno y sus empleados estaban protegidos por las garantías de la Ley de Personal de Servicio Público de *240 Puerto Rico.(21) También sostuvimos que el CRIM no tiene verdadera autonomía fiscal debido a su incapacidad para generar sus propios fondos.(22)
La Ley 80, supra, define al CRIM como una entidad municipal que, en representación de los municipios y bajo el control de éstos, va a estar a cargo de recaudar, recibir y distribuir los fondos públicos que corresponden a los muni-cipios de Puerto Rico. Es dirigido por una Junta compuesta por funcionarios públicos. Su Presidente es un alcalde. Sus empleados tienen derecho a acogerse a los beneficios de la Ley del Sistema de Retiro de los Empleados del Gobierno de Puerto Rico y sus Instrumentalidades y están sujetos a la Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico.
Es importante señalar que si una instrumentalidad, como el CRIM, tiene personalidad jurídica propia, no se desvirtúa su naturaleza de entidad pública. En El Vocero v. Junta de Planificación, 121 D.P.R. 115, 122 (1988), expresamos lo siguiente:
Resumiendo, la Junta es una instrumentalidad, aunque no una corporación pública, del Estado. La facultad concedida en su ley orgánica de comparecer a los tribunales mediante sus propios abogados no desvirtúa su naturaleza de agencia pública. Por ello le beneficia el término de sesenta (60) días para recurrir ante nos, ya sea que esté representada^ por el Procurador General o por sus propios abogados. (Énfasis suplido.)
En resumen, las características y la naturaleza de las funciones que presta el CRIM ameritan que esta entidad sea tratada como una instrumentalidad del Estado según la Regla 13(A) del Reglamento del Tribunal de Apelaciones, supra, y la Regla 53.1(c) de las de Procedimiento Civil, supra. Resolvemos que el CRIM cuenta con un término de *241 sesenta días para acudir en apelación ante el Tribunal de Apelaciones.
Por consiguiente, tomando en consideración qué.la Sen-tencia del Tribunal de Primera Instancia fue notificada el 14 de noviembre de 2005 y el CRIM presentó ante el Tribunal de Apelaciones su Apelación el 13 de enero de 2006, dentro del término jurisdiccional de sesenta días, resolve-mos que el foro intermedio apelativo tenía jurisdicción para atender dicho recurso apelativo.
Por los fundamentos antes expuestos, confirmamos la sentencia recurrida.

 Apéndice del recurso de Certiorari, págs. 180-185.

 21 L.P.R.A. see. 5001 et seq.

 Apéndice del recurso de Certiorari, págs. 14-185.

 íd., págs. 11-13.

6) íd., págs. 4-8.

 Íd., págs. 2-3.

 32 L.P.R.A. Ap. III.

 4 L.P.R.A. Ap. XXII-B.

 21 L.P.R.A. see. 5801 et seq.

 C.R.I.M. v. Fed. Central Trabajadores, 142 D.P.R. 968, 974-975 (1997).

 íd.

 Art. 23(f) de la Ley Núm. 80 de 30 de agosto de 1991 (21 L.P.R.A. sec. 5801n).

 21 L.P.R.A. sec. 5804.

 21 L.P.R.A. sec. 5805.

 21 L.P.R.A. sec. 5807.

 21 L.P.R.A. sec. 5803(l).

 21 L.P.R.A. sec. 5809.

 íd.

 íd.

 Vázquez v. A.R.Pe., 128 D.P.R. 513 (1991); Pueblo v. Ortega Santiago, 125 D.P.R. 203 (1990); Meléndez v. Tribunal Superior, 90 D.P.R. 656 (1964).

 C.R.I.M. v. Fed. Central Trabajadores, supra.

 íd.